ATLANTIC COUNTY COURT OF COMMON PLEAS.

ANNA I. CIBULLA, EXECUTRIX OF THE ESTATE OF JOHN CIBULLA, DECEASED, PLAINTIFF, v. PENNSYLVANIA-READING SEASHORE LINES, DEFENDANT.

Decided December 6, 1946.

For the plaintiff, *Abraham Rosenberg.*

For the defendant, *Lloyd, Horn & Perskie.*

HANEMAN, C. P. J.  This is a motion directed at the complaint in an action commenced under *R. S.* 2:47–1, *et seq.*; *N. J. S. A.* 2:47–1, *et seq.*, commonly known as the "Death Act."  The complaint is filed by Anna I. Cibulla, executrix of the estate of John Cibulla, deceased, suing for herself as widow of the said John Cibulla and for his mother, Caroline Cibulla, both of whom allegedly suffered pecuniary injury as the result of his death.

Motion is now made by the defendant to strike so much of paragraph 6 of the first count as refers to Caroline Cibulla, mother of the deceased, on the ground that she is not a proper party plaintiff.

It is defendant's contention that since there is a surviving widow but no children, the foregoing statute precludes the mother from being joined as a party plaintiff and that the right to sue vests solely in the surviving widow.

The pertinent statutes involved are as hereinafter set forth:

*R. S.* 2:47–2; *N. J. S. A.* 2:47–2 (Death Act) provides as follows:

"Every action, proceeding or claim brought, instituted or made under this chapter shall be brought, instituted or made in the name of an administrator *ad prosequendum* of the decedent, for whose death damages are sought to be recovered, except where decedent dies testate and his. will is probated, in which event the executor named in the will and qualifying, or the administrator with the will annexed, as the case may be, shall bring the action, proceeding or claim."

*R. S.* 2:47–4; *N. J. S. A.* 2:47–4 (Death Act) provides as follows:

"The amount recovered in proceedings under this chapter shall be for the exclusive benefit of the widow, surviving husband, and next of kin of the decedent, and shall be distributed to them in the proportions provided by law for the distribution of the personal property of intestates, except that where decedent leaves a surviving widow or husband, but no children or descendant of any children and no parents, the widow or surviving husband shall be entitled to the whole of the amount so recovered, which amount shall be paid to her or him."

*R. S.* 2:47–5; *N. J. S. A.* 2:47–5 (Death Act) provides as follows:

"In every action brought under the provisions of this chapter the jury may give such damages as they shall deem fair and just with reference to the pecuniary injuries resulting from such death to the widow, surviving husband, and next of kin of the deceased."

*R. S.* 3:5–3; *N. J. S. A.* 3:5–3 (Statute of Distribution) provides as follows:

"If there be no children, nor any legal representative of them, the whole surplusage shall be allotted to the husband or widow, as the case may be, of the intestate."

The purpose of the original Death Act, in the language of Chief Justice Beasley in the case of *Haggerty* v. *Central Railroad Co.,* 31 *N. J. L.* 349, was as follows:

"* * * It is entirely and in the highest sense remedial in its nature. Its object was to abolish the harsh and technical rule of the common law—*actio personalis moritur cum persona.* The rule had nothing but prescriptive authority to support it; it was a defect in the law, and this statute was designed to remove the defect. It is, therefore, entitled to receive the liberal construction which appertains to remedial statutes * * *."

Originally under the common law, as above stated, there was no right of action for a wrongful death. By virtue of the Death Act such right of action vested in designated persons or classes, if they survived the deceased. In the case *sub judice,* it is uncontroverted that one or more of such persons did so survive. The question therefore arises, whether the right to sue vested exclusively in the widow.

It is apparent, that under the Statute of Distribution, as applied to the facts in the present case, the widow would be entitled exclusively to the entire recovery. The single doubt cast upon this conclusion is that portion of *R. S.* 2:47–4; *N. J. S. A.* 2:47–4, which reads as follows: "* * * except that where decedent leaves a surviving widow or husband, but no children or descendant of any children and no parents, the widow or surviving husband shall be entitled to the whole of the amount so recovered * * *." This is rather an

anomalous provision, in view of the present method of distribution set forth in *R. S.* 3:5–1, *et seq.; N. J. S. A.* 3:5–1, *et seq.*

It is to be noted that no provision is made in this proviso for the distribution of any portion of the damages to such parent in the event of the survival of a widow and parent.

In order to attempt to ascertain the intent of the legislature, it becomes necessary to examine the history of the act involved and the decisions interpreting the same.

The first enactment of a Death Act in 1848 was patterned after its English counterpart known as Lord Campbell's Act. This act provided, in so far as is here applicable, as follows:

"1. Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.

"2. Every such action shall be brought by and in the names of the personal representatives of such deceased person; and the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin in the proportions provided by law in relation to the distribution of personal property left by persons dying intestate; and in every such action the jury may give such damages as they shall deem fair and just, with reference to the pecuniary injury resulting from such death to the wife and next (of) kin of such deceased person; provided, that every such action shall be commenced within twelve calendar months after the death of such deceased person. (*Pamph. L.* 1848, *p.* 151.)"

At the time the Death Act was passed, the Statute of Distribution provided as follows:

"II. In case there be no children, nor any legal representative of them, then one moiety of the said estate shall be

allotted to the widow of the said intestate, and the residue of the said estate shall be distributed equally to every of the next of kindred of the intestate, who are in equal degree, and those who represent them; provided, that no representation shall be admitted among collaterals after brothers' and sisters' children. (*Rev.* 1877, *p.* 784.)"

It is quite apparent therefore, that at the time of the passage of the original Death Act, in the event that no children, nor any legal representative of them survived the deceased, the personal estate of the deceased was divided between the widow and the next of kin.

In 1897, *Pamph. L.* 1897, *ch.* 58, *p.* 134, the legislature amended the Death Act and inserted the provision that "where such deceased person has left, or shall leave him surviving a widow, but no children or the descendants of any children and no parents, the widow shall be entitled to the whole of said damages * * *." For the first time, therefore, the legislature saw fit to increase the interest of the widow in the event that the deceased was survived by neither children, descendants of children, nor by a parent, at the expense and to the exclusion of more remote next of kin.

For present purposes, both the Death Act and the Statute of Distribution remained unchanged until the year 1908. By *Pamph. L.* 1908, *ch.* 316, *p.* 643, the Statute of Distribution was amended to read as follows:

"*Allotment of all to widow.* II. In case there be no children, nor any legal representative of them, then the whole of the said estate shall be allotted to the widow of the said intestate."

Coincident with this amendment of the Statute of Distribution, the Death Act was amended by *Pamph. L.* 1908, *p.* 721, to read as follows:

"* * * provided, that where such deceased person has left or shall leave him surviving a widow, but no children or descendants of any children, the widow shall be entitled to the whole of the damages which she shall sustain * * *."

Quite patently, in 1908 the legislature having seen fit to change the Statute of Distribution, conformed the Death Act to such new provisions. It is noteworthy that the 1908 amend-

ment of the Death Act left intact the provision referring to distribution of damages in accordance with the Statute of Distribution, but changed only that portion of the Death Act which was appended as a proviso. From 1908 to 1913, there appeared no confusion between the Statute of Distribution and the Death Act, nor was there during this period any confusion or conflict between the several sections of the Death Act.

Prior to the passage of the above referred to acts of 1908, the Court of Errors and Appeals in *Gottlieb* v. *North Jersey Street Railway Co.*, 72 *N. J. L.* 480; 63 *Atl. Rep.* 339 (decided March 12th, 1906), decided that a suit for the death of a wife could not be brought for the benefit of her widower.

Thereafter, by *Pamph. L.* 1913, *ch.* 287, *p.* 586, § 2 of the Death Act was amended to give a surviving husband the same right of action for the death of his wife that a surviving widow had for the death of her husband. This act, however, also reinstated the provision deleted in 1908, *i. e.*, "provided that where such deceased person has left or shall leave him or her surviving a widow or husband but no children or descendant of any children and no parents, the widow or surviving husband, as the case may be, shall be entitled to the whole damages  *  *  *." Here again we are faced with the hiatus of the general direction that distribution shall be made in accordance with the Statute of Distribution, followed by a proviso which seems meaningless. Whether the inclusion of this provision which had been omitted from 1908 to 1913 was inadvertent, we are, of course, unable to positively determine. We may, however, consider its apparent purpose and effect in light of the foregoing and the decisions hereafter referred to.

It is most difficult to understand why this provision was reinserted in the statute, particularly in view of the fact that under the Statute of Distribution, then and now existing, upon the survival of a widow and failure of survival of any children or descendants of any children, the widow took the entire estate, to the exclusion of the father and mother of the deceased.

A supplement to the Death Act was passed in 1917 (*Pamph. L.* 1917, *ch.* 180, *p.* 531) which related particularly to procedure. This act retained the proviso as to the entire distribution to a surviving widow or husband upon failure of children, descendants of children and parents. No material changes have been enacted to date.

Actually it may be said that in the present posture of the Statute of Distribution, the provision of the Death Act which gives the wife the entire proceeds recovered for a husband's wrongful death, in the event of the failure of survival of children or descendants of children and parents, is surplusage. In no event, upon the survival of a wife, would the parents be entitled to any distribution of the proceeds.

The particular question here raised has never been passed upon. There are a number of reported cases which may be of aid in this requested construction.

The rights of the persons who would be entitled to sue ond recover are fixed and determined as of the date of the death of deceased. This class can neither be enlarged, nor can any member of the class be excluded from participation by reason of his own death subsequent to that of the person for whose death, action is brought. In *Cooper* v. *Shore Electric Co.,* 63 *N. J. L.* 558; 44 *Atl. Rep.* 633, the court said as follows:

"The pecuniary injury of the beneficiary begins immediately on the death of the deceased, and is a continuing injury until compensated for under the conditions expressed in the act. * * *"

In *Cooper* v. *Shore Electric Co., supra,* the court further said (at *p.* 564) ; 44 *Atl. Rep.* 635, as follows:

"The grounds on which this common law rule was vindicated were that the policy of the law refuses to recognize the interest of one person in the death of another and that the value of human life is too great to be estimated in money. *Poll Torts* 56, 57. In both of these respects the statute has wrought a change in the common law. The title of the act expresses the legislative purpose to provide for the recovery of damages in cases where the death of a person is caused by wrongful act, neglect or default. This purpose is consummated by enacting that the person or corporation whose

wrongful act, neglect or default caused the death should be liable in damages; and the action brought in the name of the personal representatives of the deceased is given for the benefit of the widow and the next of kin of the deceased; and the method by which the damages are to be adjusted is prescribed by the legislature to be such as the jury should deem fair and just with reference to the pecuniary injury resulting from such death to the widow and next of kin. The statute having provided for an action to recover damages for the death of a person by the wrongful act of another, and having conferred a pecuniary interest in the life of such deceased for the benefit of his widow and next of kin, the grounds on which such an action was denied at common law have been entirely removed. The controlling feature in this legislation is that damages are made recoverable for causing death as compensation for the pecuniary injury the designated beneficiaries have sustained by reason of the death. If there be no widow or next of kin at the time of the death of the deceased, the pecuniary injury contemplated by the statute does not exist and the action cannot be maintained. It is also clear that the pecuniary injury to be compensated for is that of the *widow or persons* who are next of kin at the time of the death of the deceased, and that the cause of action created by the statute enures to such persons as a vested right."

Since the right of action is a vested right and the pecuniary injury to be compensated for is that "of the widow *or* next of kin," how can the mother be said to have any right to join as a party plaintiff? The right of the widow became vested upon the death of her husband to the exclusion of any other claimant, under the terms of the act.

Some moment has been made in the argument and in the briefs filed that in the event of a death, where children and a widow survive, although the widow may sustain no actual pecuniary loss, upon the distribution of the funds recovered, she would participate with the children in accordance with the terms of the Statute of Distribution.

An analogy has been attempted to be drawn between such a hypothetical case and the facts with which we are now confronted. Such a situation is neither comparable nor parallel.

In the case *sub judice*, suit is brought not for and on behalf of all of the parties of a class who could participate if recovery were had, but is brought on behalf of the widow who would participate and the mother who could not participate in such recovery. If the mother were here permitted to prove pecuniary injury the jury could bring in a verdict for the damages sustained by both the widow and the mother. Upon distribution, however, the mother could not participate to any extent. It may well be that the mother has sustained actual damage—that her son had contributed to her support. The law is such as the legislature has seen fit to enact and under its terms no provision is made for the mother under such circumstances. The damages the mother may have sustained are not compensable. The ancient maxim, *"damnum abseque injuria,"* prevents any recovery by her.

Under these conditions it seems academic that the mother should not be allowed to build up the injuries for the benefit of a third party, *i. e.*, the widow.

The precise point now argued has not been passed upon by the courts of this state. The closest to a direct opinion is to be found in *Stagg* v. *McCann*, 95 *N. J. Eq.* 53; 122 *Atl. Rep.* 305, where the facts were stated by the court as follows:

"On January 1st, 1922, L. Lloyd McCann was killed while riding in an automobile which was struck at the River Street crossing, in Paterson, by a train of the New York, Susquehanna and Western Railroad Company. His wife, Kathryn F. McCann, who was riding with him at the time was injured, but survived. She was appointed administratrix *ad prosequendum* of her deceased husband, pursuant to the statute (*Pamph. L.* 1917, *p.* 531), and brought suit as such against the railroad company to recover damages under the "Death Act." In that suit she claimed that, as the widow, she alone is entitled to damages under the statute. The complainant in this bill, however, who is the mother of L. Lloyd McCann, the decedent, claims that she is also entitled to recover damages for his death, under the statute, and prays that the administratrix be decreed to amend the complaint in the suit at law, which was brought in the New Jersey Supreme

Court, so as to show that she is one of the next of kin of the decedent; and restrain the parties to that suit from compromising or settling the controversy in disregard of the complainant's rights."

The court said in 95 *N. J. Eq.* at *p.* 56; 122 *Atl. Rep.* at *p.* 306, as follows:

"There is no ambiguity in that statute. It provides that upon the death of a man leaving him surviving a widow and no children, the widow shall take the whole of his personal property. The parents do not share in his personal estate except when there is no widow or children.

"I cannot think that the legislature meant anything different in the phraseology of the proviso of the 'Death Act' above quoted than is indicated clearly in the body of the act; and I think it is clear that it intended that the parents should share in the proceeds of such an action only when and to such extent as they would otherwise share in the decedent's estate directly under the provisions of the statute of distribution."

And again in granting defendant's motion to dismiss, the court said as follows:

"* * * I am not unmindful of the force of counsel's contention in favor of the natural equity of the parents—whose pecuniary support from the decedent is cut off by his death—to participate in the distribution of any fund recovered from the party held to be responsible therefor; but, however unsatisfactory in that respect the method of distribution provided by the statute may be, the remedy for such a situation, which is in clear derogation of the common law rule, should be provided by the legislature and not by any unwarranted interpretation or construction of the existing legislative enactment."

Upon appeal the Court of Errors and Appeals in 96 *N. J. Eq.* 327; 125 *Atl. Rep.* 240, affirmed the dismissal in the following language:

"As the case is improperly here, by reason of the improper procedure, in applying to the Court of Chancery for relief, which court had no jurisdiction of the matter, we express no opinion on the merits of the controversy between the parties. The decree below, dismissing complainant's bill, must be

affirmed, but solely upon the ground that the Court of Chancery was without jurisdiction of the cause."

It is to be noted that the Court of Errors and Appeals did not either sustain or reverse the law as pronounced by the learned Vice-Chancellor. That case is, however, reasonably comparable to the present case and although *dicta* the rationale of the Vice-Chancellor's argument is most sound. The reasoning could as well apply here.

As has been generally said, the right to maintain the action must not be confused with the right to share in the distribution of the amount recovered. Still, it is basic and academic that the damages which could be recovered are only such damages as are sustained by all of a class of persons who could participate in a prospective distribution. While the act does not so state, it is clear that the intent of the legislature, gathered from the act and its judicial interpretation, was not to make the right of action joint, but solely in the first party or class named, or failing such party or class, in the next class, to the exclusion of the third. The right to sue vests in the several classes listed successively and upon failure of one class alternatively in the succeeding class.

Since the right of action is not joint, but solely successive in the order of the classes named in the statute, the mother of the deceased has no interest in any recovery, nor is she entitled to join as a party plaintiff.

Defendant's motion to strike will be granted.